## SERVICE FINANCE CORPORATION v. BROMBAUGH.

### No. 10642.

Court of Civil Appeals of Texas.
San Antonio.
Dec. 30, 1939.

B. W. Teagarden and Perry S. Robertson, both of San Antonio, for appellant.

Ingrum & Morris, of San Antonio, for appellee.

SMITH, Chief Justice.

A. B. Poe Motor Company sold an automobile to George E. Brombaugh, and took the latter's installment note for the unpaid balance of the sale price, as well as a chattel mortgage on the car to secure payment of the note. Before finally consummating the deal the Motor Company submitted it to Service Finance Corporation, dealer in such securities, and procured its agreement to finance the deal by purchasing the note and mortgage from the Motor Company. Accordingly, after Brombaugh executed and delivered the note and mortgage (which were combined in one instrument), to the Motor Company, the latter in turn sold and assigned the dual instrument to the Finance Corporation, in pursuance of the prior agreement between them. It was stipulated in the mortgage that "Said Mortgagor further covenants and agrees to keep said goods and chattels insured against loss or damage by fire and theft together with collision, property damage and public liability at the election of the holder in companies acceptable to mortgagee as said mortgagee's interest may appear, deliver-

504

ing policy to Mortgagee. And in case said Mortgagor shall neglect or refuse to obtain said insurance or pay such taxes as aforesaid, then said Mortgagee may at said Mortgagee's option, obtain such insurance and pay all such taxes and assessments aforesaid; and all sums of money thus expended are hereby secured by these presents, and shall be repayable with interest at 10% per annum upon demand from said Mortgagor to said Mortgagee, and may be retained by said Mortgagee from the proceeds of the sale of said goods and chattels herein authorized."

In a blocked space for that purpose, under the printed heading, "List Below Insurance Included in Contract," was the typewritten representation, "Fire-theft $100 deduct. Comp." In the absence of pleading, and over the objection of appellant based on that omission, appellee adduced from a witness the explanation that the notation meant "fire and theft," "$100 deductible" and "comprehensive coverage" insurance, and that "comprehensive coverage" insurance meant insurance against loss for damage to the owner's car occurring by accident other than collision. We think the trial court erred in admitting that interpretation of the meaning of the term, "Comp." without any pleading to support it. The meaning of the phrase, "fire and theft," as used here, is easily within common, no less than judicial, knowledge. The meaning of the next phrase, "$100 deduct." is far less, if at all, obvious, or within common knowledge, but the average person not initiated into the mysteries of automobile insurance lore must come to a dead stop at the cryptic sign, "Comp.", for, to him, it would perhaps be incomprehensible that it meant "comprehensive," or any other specific thing not clearly "nominated in the bond." By all means, the term needed explanation in the pleadings as a foundation for interpretative evidence.

It further appears, conclusively, that the sum of $175, in addition to the balance due on the purchase price of the car, was included in the amount of appellee's note, and that this sum covered the items of interest on the note, "Filing fees," service charges, and cost of fire, theft and "$100 deductible collision" insurance, but not including the amount of premium on "comprehensive coverage."¹ Neither the Motor Company nor the Finance Corporation procured "comprehensive coverage" upon the car, although the Finance Corporation did procure and pay for fire and theft and "$100 deductible" policies, the cost of the premiums for which were included in the amount of the note.

The trial judge found as a fact that in the negotiations between the Motor Company and the Finance Corporation the latter informed the former that it would finance the deal and that the "total cost of such financing, including insurance, would be $175.00." But the trial judge expressly declined to pass upon the issue of fact, upon conflicting testimony, "as to whether or not," as stated in appellant's brief, "the matter of taking out comprehensive insurance was discussed between the A. B. Poe Motor Company and the Service Finance Corporation, and as to whether it was agreed by the Service Finance Corporation to take out such comprehensive insurance. The Court stated that in view of the law and other facts he did not consider it necessary to resolve this conflict and did not make any finding in regard thereto, notwithstanding anything stated in the findings and conclusions elsewhere."

Within less than a month after Brombaugh purchased it, the car in question "slid" into the San Antonio River, and as a result sustained damages in the sum of $152.62. This loss would have been covered by "comprehensive coverage" insurance, had such policy been issued, but was not covered by the policies actually issued. Brombaugh brought this suit against Service Finance Corporation to recover said damages, upon the ground that the latter negligently failed, although so obligated, to procure "comprehensive coverage" upon the car, thereby leaving the owner without protection against such damage. In a trial by the court without a jury, Brombaugh recovered said amount, and the Finance Corporation has appealed. The trial court concluded, as matters of law:

"1. That the A. B. Poe Motor Company by written contract agreed with plaintiff, Geo. E. Brombaugh, to protect him with comprehensive insurance and became obligated to do so, as a part of the consideration for his note.

"2. That the Service Finance Corporation by the purchase of said contract and by assignment became obligated to take out said comprehensive coverage insurance.

"3. That as a result of failure to take out said comprehensive coverage insurance, plaintiff herein has been damaged in the amount of $152.62, the sum necessary

to repair the injuries to said automobile, against which loss he would have been indemnified had the Service Finance Corporation taken out the comprehensive coverage insurance, as it was required to do under the terms of said contract.

"4. That the plaintiff, Geo. E. Brombaugh, should have and recover judgment against the defendant, Service Finance Corporation, in the sum of $152.62, * * ."

■ We are of the opinion that the record does not support the judgment. The trial judge tested and resolved the obligations of the parties by the written contract, as we think it must be done. The mortgagor expressly covenanted in that contract to "keep (the car in question) insured against loss or damage by fire and theft, together with collision, property damage and public liability, at the election of the holder * * * and in case said mortgagor shall neglect or refuse to obtain said insurance * * * then said mortgagee may at mortgagee's option, obtain such insurance," and charge the premiums thereon against the mortgagor. It may be noted, incidentally, that "comprehensive coverage," or its equivalent, are not mentioned in this provision.

■ Under those provisions of the contract the primary duty of procuring insurance was expressly assumed by the mortgagor, it being further provided, in the alternative, that if he should fail in this duty, the option was given to the mortgagee to perform it for him in the event it chose to exercise the option. The mortgagor failed to perform that duty, whereas, the assignee of the mortgagee failed, only, to exercise its option to perform it for him. The mortgagee being under no affirmative duty, its failure to exercise its option to assume that duty was not actionable. This seems to be elemental.

■ The fact that the contract bore a notation indicating the several forms of insurance to be procured on the car, could be given no more effect than to indicate the nature of insurance the mortgagee would be authorized to procure when and if it sought to exercise its option to act in the matter. The contract does not purport to charge the mortgagee with any affirmative duty in the transaction, and it cannot be penalized for its failure to exercise an option to assume such duty.

■ It is not deemed necessary to discuss the question of whether the parties entered into parol agreements concerning the matter of insurance, since the trial court, while declaring the evidence raised such issue, declined to resolve it, and expressly excluded it from consideration in arriving at the judgment based solely on the written contract.

The judgment is reversed and the cause remanded.